## Samuel Farwell and others v. Charles E. Dewey and another.

*Action on assigned contract: not necessary to prove assignment.* — Where suit is brought on a contract in the name of the promisee *for the use and benefit of* another person named, the promisee is the legal plaintiff, and it is not necessary to show on the trial that the contract has been assigned to the person for whose use the suit is brought.

FARWELL v. DEWEY.

*Statute of frauds: promise to answer for debt of another.* — Contractors for the construction of a railroad gave their workmen certificates of the amount due them, which were presented to and accepted by the railroad company. Upon these certificates the plaintiffs furnished goods, which they charged to the contractors. In a suit brought against the contractors to recover the price, it was made [a question before the jury whether the goods were furnished on the credit of the contractors, or of third persons who, according to some of the evidence, were to make advances. The Judge charged the jury that if the goods were furnished under an arrangement with the contractors, or if they subsequently [assented to the goods being charged to them — in either case they would be liable. Whether the latter branch of this charge was correct, *quere;* the Court being equally divided on the question.

*Heard October 17th, 1863. Decided July 15th.*

Error to Genesee Circuit.

Charles E. Dewey and Alvin Crossman, suing for the use and benefit of Terbell, Jennings and Millspaugh, brought suit against the plaintiffs in error in assumpsit. On the trial before a jury it appeared that, in 1859, said Dewey and Crossman were merchants at; Flint that the defendants were at that time a firm under the name of Paul, Farwell & Co., and were engaged in constructing the Flint & Pere Marquette Railway Company's road, between East Saginaw and Flint, and that in the summer and fall of the year 1859, the defendants had several gangs of men at work, clearing and grading for their road, on the thirteen miles thereof next to the city of Flint, some of whom worked by the job, and some by the day. It appeared that goods to the amount of $1743. 70 were delivered at sundry ·times in the fall of 1859, from September 2d to December, to the men so in the employ of the defendants. Of this amount, $235.49 were furnished and at first charged to one Hughes, a sub-contractor under defendants; but afterwards charged over to defendants, $48.04 were delivered on the written order of Paul, Farwell & Co.; $27, on the written order of one of the members of said firm, and $1140.69 on orders, written or oral, by the foremen of the several gangs of men in defendants' employ, or by a sub-contractor. On the 21st of November, 1859, the defendants gave to sundry men certificates in the following form:

"Flint & Pere Marquette Railway Co. — There is due Michael Ryan forty - six and 77 - 100th dollars, for labor performed on the first thirteen miles of your road, next to Flint.

*Paul, Farwell & Co.*

Nov. 21st, 1859."

And these certificates (which were alike except as to name and amount,) were presented at the office of the said railway company, and were accepted by the company in writing (George M. Dewey then being the president, and E. H. Hazelton the treasurer of said railway company, and said Crossman one of the directors and a stockholder.) After the giving of such certificates and their acceptance as above, they were presented by the holders at the store of Dewey & Crossman, and goods delivered thereon to sundry men, and in sundry items, at different times, to the amount of $292.48, which amounts were severally indorsed on said accepted certificates by Dewey & Crossman, as payment to the extent of the goods so delivered, and all the goods so paid on such certificates were charged in the account by said Dewey & Crossman against the defendants, and made up a part of the amount of $1743.70, above spoken of.

There was no evidence in the cause of any transfer of the claim of said Dewey & Crossman to said Terbell, Jennings and Millspaugh, nor that said three last named parties had any interest in the suit, nor in the said cause of action.

Evidence was given on the part of the defendants to show that the goods so furnished were advancements to them by Dewey & Hazelton, under an arrangement with them to that effect; and that statements of account furnished to them from time to time by the plaintiffs, were so furnished in order that they might credit the same to said Dewey & Hazelton, which was done accordingly.

And thereupon the counsel for defendant requested the

Court to charge the jury, that Terbell, Jennings and Mill-spaugh are in this case the real plaintiffs in interest, and Dewey and Crossman are only nominal plaintiffs, and that without proof of a legal transfer of the cause of action to the real plaintiffs in interest, from Dewey & Crossman, the plaintiffs are not entitled to recover. This request the Court refused.

The counsel for the defendants further requested the Court to charge the jury, that the trading done on the certificates of Paul, Farwell & Co., addressed to and accepted by the Flint & Pere Marquette Railway Company, can not be charged to defendants, without proof of a request by defendants that Dewey & Crossman should pay these certificates, or a part of them; and without such proofs the plaintiffs can not recover for those items; which charge the Court refused to give; but on this point the Court charged the jury, that the plaintiffs could not recover unless the jury should find that the trading done on the certificates came within the original arrangement between the parties, or unless the defendants subsequently assented to the goods being charged to them; and in case the charging to defendants was within the original arrangement, or was subsequently assented to by them, that would make defendants liable.

The counsel for the defendants also requested the Court to charge the jury, that the amount of the account charged against Hughes, and afterwards transferred to the account of the defendants, is not a legal charge against the defendants, without proof of a promise in writing by defendants to pay the same. But the Court refused so to charge, but did charge that unless the jury find that the goods were delivered according to arrangement, or subsequently assented to by defendants, the defendants would not be bound by such transfer of accounts; but if there was such an arrangement on which

the goods were delivered, and such subsequent assent, then defendants were liable.

The counsel for defendants further requested the Court to charge the jury, that if the jury shall find from the testimony that the arrangement with plaintiffs, proposed or assented to by defendants, and pursuant to which the goods in question were paid out by plaintiffs, was understood by defendants, when made and while being carried out, to be an arrangement by which these goods were to be so supplied as payment in lieu of money for which Dewey & Hazelton had become responsible, and the minds of the parties did not meet and concur on any other arrangement, then defendants are not liable in this action, though plaintiffs may have understood the arrangement differently. But the Court refused so to charge, and charged the jury that defendants are not liable, although the plaintiffs may have supposed them to be, if the jury find that there was no express or implied agreement that they should become so, for the reason that the goods were not delivered to them.

The jury returned a verdict for the plaintiffs for the amount claimed by them.

*J. G. Sutherland* and *W. L. Webber*, for plaintiffs in error.

*W. Newton* and *G. V. N. Lothrop*, for defendants in error.

MARTIN CH. J.:

As the action purports to have been brought by Dewey & Crossman for the use of Terbell and others, the plaintiffs in error insist that proof should have been made of the assignment before judgment could be rendered against them; as they claim that the assignees are the real plaintiffs. And they assign error on the refusal of the Court below to instruct the jury in accordance with this view.

This refusal of the Court was clearly correct. The declaration contains no allegation of an assignment by Dewey & Crossman to any one; nor is such an allegation usual in these cases. The words "*for the use of*" *Terbell,* &c., were designed to show that Terbell &c., had a right to receive the moneys when collected. It is commonly a matter of no interest to defendants to whom the money belongs. See 1 *Ohio,* 242. Where the interests of the defendant may be affected by the ownership — as, for example, where he claims payments or a set off— proof of the transfer of the cause of action may become necessary, as the validity of the defense may depend upon the time when it was made, and when the knowledge of it came to the defendant. It is the nature of the defense which makes proof of the assignment necessary; and then it is necessary not for the benefit of defendant, but that the rights of the assignee may be protected by the Court.

Nor do I discover any error in the refusal of the Court to charge as requested by the defendants respecting the trading done on their certificates; or in the charge as given. As this is the only question upon which a difference of opinion exists in the Court, it may be well to look into the bill of exceptions to ascertain how the question arose. It will be seen that the request is confined to a particular subject, viz: the payment upon the certificates accepted by the Flint & Pere Marquette Railway Company. It is not a general request, covering the whole case; and the Court must be presumed to have confined his attention to the subject matter of the request, instead of extending it further. It is our duty to examine the errors assigned *as* assigned; and to go no further. Where a charge of the Court has been given upon a special request, we can not apply it to a part of the case not embraced, and to which the attention of the Court was not called. To do so would be unjust to the Judge

who tried the cause, and to the parties, who only expect to meet and try questions distinctly raised.

The facts shown by the bill — and they are not disputed — are these:

November 21, 1859, the defendants gave to sundry men certificates in the following form:

"Flint & Pere Marquette Railway Co. — There is due to Michael Ryan forty - six and 77 - 100 dollars, for labor performed on the first thirteen miles of your road, next to Flint.

Paul, Farwell & Co.

Nov. 21st, 1859. $46.77."

These certificates, which were alike except as to date and amount, were presented at the office of the railway company, and were accepted by the company in writing, after which they were presented by the holders at the store of Dewey & Crossman, and goods delivered thereon at different times to the amount of $292.48, the purchases being indorsed by Dewey & Crossman on the certificates, as payment to the extent of the goods so delivered; and all the goods so paid on the certificates were charged by Dewey & Crossman in account against the defendants, and made up a part of the amount of $1743.70.

The request of the defendants was, that the Court should charge the jury that the trading done on the certificates of the defendants, addressed to and accepted by the Flint & Pere Marquette Railway Co., could not be charged to defendants without proof of a request by defendants that plaintiff should pay those certificates, or a part of them; and without such proof the plaintiffs can not recover for those items. This the Court very properly refused; but did instruct the jury — and correctly — that they must find that the trading came within the original arrangement of the parties before they could find a verdict for the plaintiffs upon this item: and he further charged, "or unless the defendants subsequently assen-

ted to the goods being charged to them; *and in case the charging to the defendants was within the original arrangement, or was subsequently assented to by them, that would make defendants liable.*"

It is contended that this latter portion of the charge is erroneous, as it instructed the jury that, by subsequent parol assent, the defendants might be made liable for the debt of another without a promise in writing. I do not view the charge, nor its effect, in this light. The transaction was simply this: The goods had been charged to the defendants. They could either recognise the account or repudiate it at their option: if the first, the question of their liability would be settled; if the latter, it would be left to be judicially determined. But so long as the charge stood upon the plaintiffs' books against them, the defendants had a perfect right to admit or assent to it. As the case would stand, no one else would be the debtor. This was clearly the idea of the Circuit Judge in the charge, as is seen by the concluding paragraph. How such a transaction can possibly be construed as an undertaking to answer for the debt of another, I am unable to perceive.

Nor do I think the Court erred in the refusal to charge as requested in relation to the account charged to Hughes, or in the charge actually given. Evidence had been given on both sides as to whom the credit was given, and the reason of the account being kept in the name of Hughes: and the Court left the whole question very fairly to the jury.

Error is assigned upon the refusal of another request, which amounted substantially to this: That the *ex parte* understanding of the vendee, of which the vendor had no knowledge, respecting the contract for the delivery of the goods to defendants' employees, should prevail against that of the vendor, although goods to a large amount had been received by the vendees under such contract

This can hardly be held to be good law or sound morals, so long as the vendee neglects or refuses to restore the vendor to his original position by restoring the property received, or by paying for it. An agreement in law would most clearly exist in such a case, arising from the duty to make good the party deprived of his property; and the Court therefore rightly refused the request, and correctly charged in response to the request, that "the defendants are not liable, although the plaintiffs may have supposed them to be so, if the jury find that there was no express or implied agreement that they should become so, for the reason that the goods were not delivered to them."

. I see no error in the charges and refusals of the Court, and think the judgment should be affirmed.

· MANNING J. concurred.


CAMPBELL J.:

Plaintiffs in error were sued for the price of goods furnished by defendants in error to different persons in pursuance of an alleged arrangement. Paul, Farwell & Co. were contractors upon the Flint & Pere Marquette Railway, and the goods were furnished to laborers and workmen in their employ. It was a question before the jury whether these goods were furnished upon the credit of Paul, Farwell & Co., or upon the credit of other parties who, according to some of the evidence in the case, were bound to make advances. There was no evidence of any written promise to pay the debt, but there was some evidence tending to prove a recognition of it, and also contradictory evidence on this point. The Court charged that, if the goods were furnished under the original arrangement, or if Paul, Farwell & Co. subsequently assented to the goods being charged to them, in either case they would be liable.

FARWELL v. DEWEY.

I think the first branch of this charge was correct, but the latter clause was erroneous. If the debt was originally the debt of another, the promise to pay it is required by the statute of Frauds to be in writing. In the absence of a written undertaking, I do not see how there could be any cause of action upon any such subsequent assent. Upon the other points presented I think there was no error. But for this charge I think judgment should be reversed, and a new trial granted.

CHRISTIANCY J. concurred in this opinion.

The Court being thus equally divided, the judgment was affirmed.